UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

ASHANTE DIAZ on behalf of herself and all others similarly situated,

Plaintiff,

v.

MUSH FOODS, INC.,

Defendant.

-----------------------------------------------------------------

Docket No.

**CLASS ACTION COMPLAINT & DEMAND <u>FOR JURY TRIAL</u>**

Plaintiff, ASHANTE DIAZ ("Plaintiff" or ""), on behalf of herself and all others similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel, JOSEPH & NORINSBERG, LLC, as and for their putative class action complaint upon Defendant, Mush Foods, Inc., ("Mush Foods" or "Defendant"), hereby alleges as follows:

## <u>INTRODUCTION</u>

1. Plaintiff ASHANTE DIAZ is a resident of Bronx County, New York, and is legally blind due to Neovascular (Exudative) Age-Related Macular Degeneration affecting both eyes bilaterally. As documented by Bessie Abraham, OD, a licensed optometrist practicing within the Department of Ophthalmology at NYU Langone Health, 550 First Avenue, New York, New York 10016, and as certified by the New York State Commission for the Blind (NYSCB) under Registration Number 379872, issued June 10, 2026, and signed by Julie Hovey, Associate Commissioner, Ms. Diaz's left eye has progressed to end-stage disease with complete disciform scarring and no light perception, while her right eye retains only approximately twenty percent

best-corrected visual acuity with a dense central scotoma that eliminates functional fine-detail and central vision. Together, these conditions satisfy the statutory definition of legal blindness under both New York State and federal law. Exhibit A

2. Ms. Diaz relies on a dual-technology assistive platform to access digital content. For her residual right-eye vision she uses screen magnification software — specifically ZoomText and MAGic — which enlarges and enhances on-screen content to a level she can partially perceive. However, because even maximally magnified content remains inaccessible when a website lacks proper structural coding, sufficient color contrast, text alternatives for non-text elements, or pause controls for moving media, she also relies on JAWS and NVDA screen reading software to obtain information that magnification alone cannot deliver. This dual-technology dependency means that Ms. Diaz is affected by a broader range of accessibility failures than a totally blind screen reader user: she is harmed both by failures of visual presentation — insufficient contrast ratios, autoplay video without pause controls, and unlabeled interactive elements — and by failures of accessible coding — missing alternative text, empty button labels, inaccessible form fields, and broken navigational links. A website that fails on either dimension denies her equal access.

3. Plaintiff brings this civil action against Defendant MUSH Foods Inc. for its failure to design, construct, maintain, and operate its website, www.eatmush.com, in a manner that is fully accessible to and independently usable by blind and visually impaired individuals. Defendant's denial of full and equal access to its website — and therefore to the refrigerated ready-to-eat nutrition products, protein bar line, and customizable subscription services offered exclusively or primarily through www.eatmush.com — constitutes a violation of Plaintiff's rights

under the Americans with Disabilities Act ("ADA") and applicable New York State and City law.

4. On June 15, 2026, July 22, 2026, and August 5, 2026, Plaintiff attempted on three separate occasions to access www.eatmush.com from her home computer located at 1680 Pelham Parkway South, Apt. 1C, Bronx, New York, using JAWS screen reading software and ZoomText screen magnification software. Her goal on each visit was to browse, evaluate, and purchase the following specific products: (a) the MUSH Peanut Butter Chocolate Chip Overnight Oats; (b) the MUSH Protein Bar line; and (c) a customized Build-A-Bundle subscription through Defendant's subscription configuration tool, accessible at https://eatmush.com/tools/bundle-subscriptions/bundle/7396790861958?product=build-a-bundle. These products were selected for reasons specific to Ms. Diaz's diagnosis, nutritional needs, and the functional limitations imposed by her visual impairment, as further described in paragraph 5 below.

5. MUSH overnight oats, protein bars, and the Build-A-Bundle subscription service are not interchangeable with products offered by competing food brands through conventional retail channels, and Ms. Diaz's selection of Defendant's Website as her intended purchase platform was not arbitrary. MUSH overnight oats are a refrigerated, ready-to-eat product distributed through a cold-chain supply model — they are not shelf-stable grocery items available at the corner stores, bodegas, or small-format urban grocers most accessible to Ms. Diaz as a legally blind resident of the Pelham Parkway neighborhood of the Bronx. Online ordering with home delivery through www.eatmush.com is therefore not a convenience for Ms. Diaz but the only practical means by which she can independently access MUSH's refrigerated product line at all, as no physical retail alternative exists within her immediate community that carries this product in the full range of flavor configurations she sought to compare and select. MUSH's Protein Bar

line, launched in late 2024, remains in an early distribution phase with limited physical retail placement, and www.eatmush.com functions as the primary consumer purchase channel for that product. Defendant's Build-A-Bundle subscription service — which allows a consumer to select preferred flavors, configure a delivery frequency, and receive a recurring discount — is available exclusively through www.eatmush.com and cannot be accessed, configured, or completed through any third-party retailer or physical store. For Ms. Diaz, whose bilateral macular degeneration makes reading physical product packaging, comparing items on a refrigerated store shelf, and navigating a crowded grocery aisle impossible without sighted assistance, Defendant's website is the essential and only independent pathway through which she can exercise equal consumer choice. The Website is also the sole platform where she can independently review full nutritional profiles, ingredient lists, allergen disclosures, and flavor-by-flavor comparisons — information that is of particular importance to Ms. Diaz given that oxidative stress reduction and anti-inflammatory nutrition are recognized supportive interventions in managing the progression of Age-Related Macular Degeneration.

6. Despite three separate attempts, Ms. Diaz was unable to independently access, evaluate, or purchase any of the products she sought on any of her three visits. The access barriers she encountered are not isolated coding errors — they are structural, site-wide failures documented across fifty-one audited pages by the SortSite accessibility evaluation conducted on August 11, 2026. The individual product page for the MUSH Peanut Butter Chocolate Chip Overnight Oats returned an HTTP 429 error — the page failed to load entirely. The Protein Bars collection page returned the same HTTP 429 error, preventing Ms. Diaz from browsing the product category at all. The Build-A-Bundle subscription configuration page — the exclusive online portal for the

subscription service she specifically sought — also returned an HTTP 429 error and was completely inaccessible. On the pages that did load, SortSite identified eleven Level A accessibility violations across fifty-one pages, the most severe classification under WCAG 2.1, meaning pages with Level A failures are, in the evaluator's own language, "unusable for some people." Images without accessible names were identified on forty-nine of fifty-one pages audited, depriving Ms. Diaz of all product visual information conveyed through photographs. Autoplay videos played without pause controls on ten pages — a barrier of particular severity for Ms. Diaz, whose partial residual vision in her right eye is directly disrupted by uncontrolled moving content on a screen she is actively attempting to magnify and read. Additional Level A violations included inaccessible iframe elements, placeholder alternative text, unlabeled interactive controls, and missing document language declarations. Exhibit B.

7. Defendant MUSH Foods Inc. is a Delaware corporation with its principal place of business located at 212 West Superior Street, Suite 501-502, Chicago, Illinois 60654. Defendant owns and operates www.eatmush.com, through which it markets, distributes, and sells refrigerated overnight oats, protein bars, oatmeal smoothie pouches, and customizable subscription plans to consumers throughout the United States, including residents of New York. Defendant generates approximately one hundred million dollars in annual revenue, a substantial portion of which is driven by consumer transactions initiated through www.eatmush.com. Defendant is registered to do business in New York State, actively markets its products to New York City consumers through digital advertising and social media, and maintains distribution arrangements reaching more than 17,500 retail locations nationwide, including in New York.

8. Defendant's failure to provide an accessible website denied Ms. Diaz equal access

to the goods and services it makes freely available to non-disabled customers. Despite generating approximately one hundred million dollars in annual revenue on the Shopify Plus platform — a technology stack that supports full WCAG 2.1 Level AA compliance through available developer resources, accessibility plugins, and established coding standards — Defendant has failed to implement even the most fundamental accessibility requirements across www.eatmush.com. The eleven Level A violations identified across fifty-one audited pages, the broken links returning HTTP 429 errors across thirty-one pages, and the near-total absence of alternative text on product images throughout the site reflect not an oversight but a sustained and knowing disregard for the rights of individuals with disabilities. Plaintiff seeks a permanent injunction requiring Defendant to revise its corporate policies, practices, and procedures to ensure that www.eatmush.com becomes and remains fully accessible to blind and visually impaired users in conformance with WCAG 2.1 Level AA standards, and all additional relief set forth in the Prayer for Relief below.

## JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12182 because Plaintiff's claims arise under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, et seq.

10. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims, including those under the New York State Human Rights Law, Article 15 (Executive Law § 290 et seq.) ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq., ("NYCHRL") and § 296 et seq.; and the New York State Civil Rights Law, Article 4, §§ 40-c and 40-d ("NYCRL").

11. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because

Defendant Mush Foods Inc. conducts substantial and continuous business in this District through its interactive website, www.eatmush.com. Plaintiff, a legally blind resident of New York, New York, accessed and attempted to use the Website on multiple occasions from within this District—specifically on August 18, 2026, August 19, 2026, and August 23, 2026. Each attempt resulted in a denial of equal access due to persistent accessibility barriers. A significant portion of the discriminatory conduct giving rise to this action occurred within the Southern District of New York ("SDNY").

12. Defendant is registered to do business in New York State and maintains a commercial presence through its distribution network, including retail availability of its "MUSH" branded products in Manhattan, Brooklyn, Queens, and the Bronx. Mush Foods Inc. also targets New York consumers through digital advertising, promotional campaigns, and direct-to-consumer online sales. Through its website and retail partnerships, Mush Foods actively solicits and transacts business with New York residents, including entering into contracts for the sale of goods. These transactions involve the repeated transmission of digital content and commercial offers into this District.

13. Courts in the Southern District of New York have consistently held that website accessibility barriers encountered by users within the District provide a sufficient basis for personal jurisdiction over out-of-state operators. In *Del-Orden v. Bonobos, Inc.*, No. 17-cv-2744 (PAE), 2017 WL 6547902 (S.D.N.Y. Dec. 20, 2017), the court held that a website with a nexus to a physical retail location qualifies as a place of public accommodation under Title III of the ADA. The court emphasized that digital barriers affecting access to goods and services in New York support jurisdiction and venue. Similarly, in *Romero v. 88 Acres Foods, Inc.*, No. 1:21-cv-00012

(S.D.N.Y. Jan. 18, 2022), the court found that a defendant's commercial targeting of New York consumers through its website supported venue and personal jurisdiction.

14. Accordingly, jurisdiction and venue are proper in this District because Plaintiff resides here, Defendant transacts business here, and the discriminatory conduct occurred here.

## THE PARTIES

15. Plaintiff, ASHANTE DIAZ is and was at all relevant times a resident of Bronx County, New York.

16. Plaintiff is legally blind and visually impaired, qualifying as an individual with a disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102(1)-(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the New York City Human Rights Law ("NYCHRL").

17. Defendant's website functions as a commercial place of public accommodation subject to Title III of the ADA and the NYCHRL. At all relevant times, Defendant has maintained control over the design, coding, and digital infrastructure of the website and is responsible for ensuring its compliance with applicable accessibility standards, including the Web Content Accessibility Guidelines ("WCAG") 2.1 Level AA. Although the website includes superficial references to accessibility, it lacks meaningful ARIA labeling, semantic structure, and keyboard operability across key interactive features. These deficiencies render the website inaccessible to blind users and place Defendant on constructive notice of noncompliance.

## NATURE OF ACTION

18. This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., challenging Defendant's operation of a public-facing website that denies blind

and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its website in accordance with the Web Content Accessibility Guidelines (WCAG 2.1) constitutes unlawful discrimination and violates federal accessibility standards.

19. The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and communicating—for sighted, blind, and visually impaired individuals alike.

20. In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

21. Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and NonVisual Desktop Access ("NVDA"), which is open-source. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

22. Plaintiff,ASHANTE DIAZ is a blind, visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), its implementing regulations at 28

C.F.R. §§ 36.101 et seq., and the NYCHRL. To access the Internet, Plaintiff relies on screen-reading software such as NVDA for Windows.

23. For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users are unable to access the same content available to sighted users. Screen-reading software "translates the visual Internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained:

> "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a change in the color of the text… The screen reading software uses auditory—rather than visual—cues to relay this same information… Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard."
>
> See also American Federation for the Blind, *Screen Readers*, AFB Technology Guide (last accessed June 12, 2025), estimating that 26 million American adults report sight deficiency.

24. The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG") 2.0 and 2.1, which establish internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and government agencies, including the U.S. Department of Justice, and have been recognized by

courts as the appropriate benchmark for ADA compliance.

25. Non-compliant websites pose recurring barriers to blind and visually-impaired users. Common violations include, but are not limited to:

a. Missing text equivalents for non-text elements

b. Unlabeled frames and navigation regions

c. Scripts without accessible alternatives

d. Inaccessible forms and input fields

e. Content conveyed solely through visual presentation

f. Inability to resize text without loss of functionality

g. Time limits that cannot be adjusted or disabled

h. Missing or ambiguous page titles

i. Links lacking descriptive context

j. Keyboard focus indicators that are not discernible

k. Undetectable default language settings

l. Components that trigger unexpected context changes

m. Settings that alter context without user notice

n. Input fields lacking labels or instructions, including inaccessible CAPTCHA prompts

o. Improperly nested markup, duplicate attributes, and non-unique IDs

p. Inaccessible Portable Document Format (PDF) files

q. User interface elements whose roles and states cannot be programmatically determined items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

## STATEMENT OF FACTS

26. Plaintiff ASHANTE DIAZ is a legally blind consumer residing in New York County, New York. Plaintiff's visual impairment substantially limits her major life activities, including seeing, reading, and independently accessing digital content. She is unable to read printed materials and relies exclusively on screen-reading software, including NVDA, to navigate websites, review product information, and complete online transactions. Plaintiff uses assistive technology daily and has completed formal orientation and mobility training to maintain independence and equal access to goods and services.

27. On multiple occasions in August 2026, including August 18, August 19, and August 23, Plaintiff attempted to browse and purchase food products from Defendant's commercial website, www.eatmush.com. Plaintiff specifically sought to review and purchase several items marketed as part of Defendant's "MUSH" branded product line, including ready-to-eat oats and protein bars such as the Peanut Butter Chocolate Chip Protein Bar. Plaintiff attempted to compare flavors, review nutritional information, evaluate subscription options, and complete a purchase through Defendant's digital storefront.

28. Plaintiff selected Mush Foods Inc. because of its reputation for offering minimally processed, high-protein, dairy-free food products marketed toward consumers seeking convenient, health-focused meal options. Plaintiff relies on products with clear nutritional disclosures and predictable ingredient profiles due to dietary restrictions and the need to avoid allergens. Defendant's website includes product-specific nutritional panels, ingredient lists, subscription plans, and bundle options that are only accessible through its proprietary digital interface. These features are not reliably available through third-party retailers, and certain flavors and bundles are

exclusive to Defendant's website.

29. Despite her efforts, Plaintiff was unable to complete any product review, comparison, or checkout due to pervasive accessibility barriers present on the exact pages she attempted to access. A forensic audit conducted by Plaintiff's counsel revealed multiple WCAG 2.1 Level AA violations directly affecting the product pages Plaintiff visited, including:

• Missing alternative text (WCAG 1.1.1): Product images on the page used blank or non-descriptive alt attributes. NVDA announced these images simply as "graphic," depriving Plaintiff of any meaningful description of the product's appearance, flavor, or packaging. This prevented Plaintiff from distinguishing between flavors or confirming she was viewing the correct item.

• Non-semantic flavor selector (WCAG 1.3.1, 4.1.2): The "FLAVORS: Peanut Butter Chocolate Chip" selector was coded as plain text rather than a properly labeled interactive control. NVDA did not announce it as a selectable option, preventing Plaintiff from determining whether other flavors existed or whether she could change the selection.

• Unlabeled "Add to Cart" and "Subscribe & Save" buttons (WCAG 4.1.2): Critical purchasing controls lacked accessible names or ARIA labels. NVDA announced these elements simply as "button," making it impossible for Plaintiff to initiate a one-time purchase or select a subscription plan.

• Inacessible subscription frequency selector (WCAG 2.1.1, 2.1.2): The "Deliver every 2 weeks" control was not keyboard-operable. NVDA users could not adjust

delivery frequency or confirm the default setting, preventing Plaintiff from configuring subscription options.

• Improper heading hierarchy (WCAG 1.3.1): The page contained repeated headings, skipped levels, and non-semantic containers used for major sections such as "Ingredients," "Nutrition Information," and "Frequently Asked Questions." NVDA lost focus when navigating between sections, causing Plaintiff to miss critical disclosures such as allergen warnings ("Contains: Almond, Coconut, Milk, and Peanut").

• Hidden elements receiving keyboard focus: Multiple pages contained ARIA-hidden content that remained focusable, causing NVDA to announce silence when tabbing through interactive controls. This created false navigation progress and prevented Plaintiff from locating functional purchase buttons.

• Invalid markup and duplicate IDs (WCAG 4.1.1): The page used non-unique element IDs and improperly nested HTML, causing NVDA to skip over product listings, misread sections, and lose track of interactive elements. This prevented Plaintiff from accessing related products such as Double Chocolate Chip Protein Bar and Cinnamon Swirl Protein Bar.

30. These barriers were not theoretical. They appeared on the exact product pages Plaintiff attempted to access, including the Peanut Butter Chocolate Chip Protein Bar page (turn0browsertab1), and rendered the site incompatible with NVDA screen-reading software. Plaintiff's exclusion was real, repeatable, and corroborated by forensic evidence. She was unable to select a flavor, review nutritional information, evaluate subscription options, or initiate

checkout independently.

31. The accessibility barriers directly interfered with specific product functions:

• Missing alt text prevented Plaintiff from confirming product identity.

• Unlabeled buttons prevented Plaintiff from adding items to her cart.

• Inaccessible subscription controls prevented Plaintiff from selecting delivery frequency.

• Improper headings prevented Plaintiff from locating allergen warnings.

• Keyboard traps prevented Plaintiff from navigating to checkout.

• Invalid markup prevented Plaintiff from comparing related products.

Each barrier directly obstructed a required step in the purchasing process.

32. Plaintiff will return to www.eatmush.com because the products she sought—specific flavors of ready-to-eat oats, protein bars, and subscription bundles—are exclusive to Defendant's website and not reliably available through third-party retailers or physical storefronts. Defendant markets these items as digitally customizable, offering subscription discounts, bundle configurations, and product-specific disclosures that are only accessible through its proprietary interface.

33. Plaintiff remains highly motivated to complete her purchase once the site is made accessible. Her interest is not speculative; it is rooted in her dietary needs, her reliance on screen-reading software, and her prior attempts to engage with Defendant's product selection and customization tools. The exclusion she experienced was not a one-time inconvenience but a denial of access to a brand that markets itself as health-focused and consumer-friendly yet fails to accommodate blind users.

## CLASS ACTION ALLEGATIONS

34. Plaintiff ASHANTE DIAZ brings this action on behalf of himself, and all others similarly situated, seeking certification of a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access the Website and were denied equal access to its products, services, and support due to persistent digital accessibility barriers during the relevant statutory period.

35. Plaintiff also seeks certification of a New York Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals residing in the City and State of New York who have attempted to access the Websitr and were similarly denied equal access to its offerings due to the same systemic barriers.

36. Common questions of law and fact exist among the Class, including:

- Whether the Website qualifies as a "public accommodation" under Title III of the ADA;
- Whether Defendant's Website constitutes a "place or provider of public accommodation" under the NYCHRL;
- Whether the website's persistent accessibility barriers violate the ADA by denying blind users full and equal access to products, services, and support;
- Whether the same barriers violate the NYCHRL, NYCRL, and NYSHRL by excluding blind users from meaningful participation in the digital marketplace.

37. Plaintiff's claims are typical of the Class. Like other blind individuals, he relies on screen-reading software and keyboard navigation to access online platforms. He encountered the same systemic barriers—unlabeled buttons, inaccessible forms, mouse-dependent controls, and unreadable product specifications—that affect all Class members.

38. Plaintiff will fairly and adequately represent the interests of the Class. He has retained counsel experienced in disability rights and complex class action litigation. Plaintiff has no interests antagonistic to those of the Class and seeks injunctive and declaratory relief applicable to all members.

39. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or failed to act on grounds generally applicable to the Class, warranting injunctive relief to remediate the website's accessibility barriers.

40. Alternatively, certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over individual issues, and a class action is the most efficient and fair method for adjudicating these claims.

41. Maintaining this action as a class proceeding will promote judicial economy by avoiding duplicative litigation and ensuring uniform relief for a class likely to include hundreds, if not thousands, of blind individuals who have attempted to use www.ancestry.comand faced exclusion.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.)***

42. Plaintiff, ASHANTE DIAZ, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

43. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns,

> leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

44. Defendant's website, www.eatmush.com, is a service offered to the general public and constitutes a place of public accommodation under Title III. As such, Defendant must ensure that blind and visually impaired consumers have full and equal access to the website's goods, services, and purchasing functions.

45. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

46. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege,

advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

47. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

48. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

**SECOND CAUSE OF ACTION**
**(New York State Human Rights Law)**
**("NYSHRL")**

49. Plaintiff, ASHANTE DIAZ on behalf of herself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

50. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

51. Plaintiff, at all times relevant to this action, as a result of her loss of vision, has a

substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

52. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

53. Plaintiff has visited the Website on a number of occasions and has encountered barriers to his access that exist.

54. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

55. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

56. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-

impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

57. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

58. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

59. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

60. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff

and Subclass, causing irreparable harm.

61. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

**THIRD CAUSE OF ACTION**
**(Violation of New York State Civil Rights Law)**
**("NYCRL")**

62. Plaintiff, ASHANTE DIAZ on behalf of herself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

63. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

64. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

65. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

66. § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical,

mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

67. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40, as Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

68. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

69. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

70. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id..*.

71. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

## FOURTH CAUSE OF ACTION
## (Violations of the New York City Human Rights Law) ("NYCHRL")

72. Plaintiff, ASHANTE DIAZ on behalf of herself and the New York City Sub-Class

Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

73. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

74. Defendant is subject to NYCHRL because it owns and operates the Website www.eatmush.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

75. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

76. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

77. Defendant's actions constitute willful intentional discrimination against the Sub-

Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

78. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

79. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

80. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

81. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

82. Plaintiff is also entitled to reasonable attorneys' fees and costs.

83. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

84. Plaintiff, ASHANTE DIAZ on behalf of herself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

85. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, www.eatmush.com which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq*., prohibiting discrimination against the blind.

86. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a. A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b. A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c. A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d. An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e. Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f. Pre-judgment and post-judgment interest;

g. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h. Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
August 24, 2026

Respectfully submitted,
**JOSEPH & NORINSBERG, LLC**
*/s/ Robert Schonfeld*
Robert Schonfeld, Esq
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com